IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ZACHARY G. FRIEDEL,

Petitioner,

v.  Civil Case No. 12-cv-590-DRH
Criminal Case No. 10-cr-30119-DRH

UNITED STATES OF AMERICA,

Respondent.

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

### I. Introduction

Now before this Court is petitioner Zachary G. Friedel's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The government opposes Friedel's motion (Doc. 5). For the following reasons, Friedel's motion for relief pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.[1]

### II. Procedural History

On July 21, 2010, a federal indictment charged Friedel with one count of possession of child pornography (Cr. Doc. 1). *See* 18 U.S.C. § 2252(a)(4)(B).

---

[1] Having closely examined the record before it, the Court concludes Friedel's claims do not warrant an evidentiary hearing. *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002)("for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner [has] actual proof of the allegations going beyond mere unsupported assertions"); *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000) (holding a hearing not required where record conclusively demonstrates that a defendant is entitled to no relief on § 2255 motion); *see also* Rules 4(b) and 8(a) of Rules Governing Section 2255 Proceedings.

Following Friedel's open plea of guilty on January 26, 2011 (Cr. Docs. 24, 25, 26, and 27), Friedel received his presentence investigation report (PSR), indicating an advisory guideline sentence range of 97-120 months (Cr. Doc. 31, p. 10) (filed under seal). In agreement with the government's recommendation of a below-guideline sentence, the undersigned sentenced Friedel to 60 months' imprisonment on May 6, 2011 (Cr. Doc. 39). Friedel did not appeal his conviction. In sum, Friedel instantly argues his counsel was ineffective throughout the plea bargaining process, counsel misled and misinformed him, and his plea was not knowingly made because he did not understand or comprehend the plea.

### III. Factual Summary

Friedel's retained counsel, Edward J. Fanning (Fanning), represented Friedel throughout the entirety of the criminal proceedings against him. Relevant to Friedel's eventual guilty plea and Fanning's representation of Friedel, on August 18, 2010, the government sent a letter to Fanning setting forth the government's sentencing calculation (Doc. 5-6, p. 5). The letter discussed the possibility of an "open plea," but did not make a plea offer. Fanning inspected the illegal images at issue and met with the prosecutor and case agent assigned to Friedel's case on August 30, 2010. On January 23, 2011 (mistakenly dated as January 23, 2010), Dr. Victoria Codispoti (Dr. Codispoti) prepared a psychiatric evaluation of Friedel, at Fanning's request.

At the change of plea hearing held before Magistrate Judge Clifford J. Proud on January 26, 2011, Friedel was advised he could consult with Fanning

should any question arise that Friedel did not understand, as Friedel's understanding was essential to a valid plea. Friedel indicated that he was 27 years old, completed two years of college, and could speak, write, and understand English (Cr. Doc. 48, pp. 3-4). Fanning stated he never had problems communicating with Friedel. Friedel stated he was not, nor had he recently been, under the care of a physician or psychiatrist, hospitalized, or treated for any narcotic or drug addiction. Friedel noted feeling "decent" and stated he had not taken any narcotic drugs, any medicine of any type, or any alcoholic beverages in the past 24 hours. Friedel further stated that neither he nor his counsel had doubts as to Friedel's competence to plea (Cr. Doc. 28, p. 4). Thereafter, Magistrate Judge Proud specifically found Friedel competent to understand the proceedings and to enter a knowing plea. Friedel indicated that he had had ample opportunity to discuss his case with Fanning and that he was satisfied with Fanning's representation (Cr. Doc. 48, p. 5).

After the prosecution explained the elements of Friedel's charged offense, Magistrate Judge Proud advised Friedel of the penalties that could be imposed- a term of imprisonment of up to ten years, a fine of up to $250,000.00, a term of supervised release of at least five years and up to life, and a special assessment of $100.00. Friedel was then asked, "Has anyone threatened you or anyone else forced you to in any way to come here and plead guilty today?" Friedel replied, "No" (Cr. Doc. 48, p. 9). When Friedel was asked, "Has anyone, including your

own attorney, made any prophecy, any promise or any prediction as to what your sentence will or will not be?" Friedel again replied, "No" (Cr. Doc. 48, pp. 9-10).

Further, Magistrate Judge Proud explained the advisory nature of the sentencing guidelines (Cr. Doc. 48, p. 10). Specifically regarding Friedel's plea agreement, which Friedel acknowledged reading, discussing with Fanning, and signing, Magistrate Judge Proud stated:

> While this is an agreement to plead guilty, it is basically a so-called open plea, which I will go over with you in a moment. But I notice in the plea agreement that on the bottom of page 4 where you understand that you are entering an open plea whereby the government has not agreed to recommend any particular sentence or guideline range. I also note that in paragraph 4 on page 5 the government is telling the Court that it believes your guideline range is 97 to 120 months and your fine range is somewhere between 15 and $150,000.

(Cr. Doc. 48, p. 12). Friedel also acknowledged his understanding of the following statement of Magistrate Judge Proud:

> [N]o matter what the government recommends and no matter what your attorney may recommend or whatever you all agree upon, the Court is absolutely not bound by it, and on the basis of your guilty plea you could be sentenced to the maximum permitted by law, which is ten years in prison, a $250,000 fine, life on supervised release, and a $100 special assessment.

(Cr. Doc. 48, p. 13).

Additionally, Friedel was asked, "Do you further understand that if the District Court judge declines to impose any sentences recommended by the government or your attorney, Mr. Fanning, and even imposes a more severe sentence than what the government is asking for, you will not be entitled to withdraw your guilty plea?" Friedel answered, "Yes, Your Honor" (Cr. Doc. 48, pp.

13-14). Thus, Magistrate Judge Proud found that, "Mr. Friedel understands what's in this agreement to plead guilty, he understands that the Court is absolutely, positively not bound by anything that counsel for either side asks the Court, and that he understands the implication of a so-called open plea, and that he also understands the forfeiture aspects of this" (Cr. Doc. 48, p. 14). Finally, Friedel acknowledged reading and signing the stipulation of facts regarding the events surrounding his charged offense (Cr. Doc. 27, pp. 14-15). He also indicated that he did exactly what the stipulation of facts says he did (Cr. Doc. 27, p. 15). Friedel acknowledged that he was pleading guilty because he was guilty and that his plea was of his own free will (Cr. Doc. 27, p. 16).

The PSR was filed on April 1, 2011 (Cr. Doc. 31). It indicated Friedel entered into an open plea of guilty, in which the parties had not agreed upon guideline computations (Cr. Doc. 31, p. 3). The PSR concluded Friedel faced a guideline sentence range of 97 to 120 months (Cr. Doc. 31, p. 10). It further noted that while Friedel was statutorily eligible for probation, the guidelines did not recommend a sentence of probation (Cr. Doc. 31, p. 11). On April 29, 2011, Fanning filed a "sentencing commentary" asking for a sentence of probation and seemingly objecting to the guideline computation listed in the PSR (Cr. Doc. 32) (filed under seal). Fanning took issue with the two-level enhancement for distribution of child pornography and the failure to assess a four level reduction for minimal or minor role (Cr. Doc. 32, pp. 3-4). The addendum to the PSR

maintained that the guideline computation was correct (Cr. Doc. 38) (filed under seal).

The undersigned sentenced Friedel on May 6, 2011 (Cr. Doc. 37). At the outset of sentencing, the undersigned determined Friedel had read the PSR carefully and thoroughly and reviewed it with Fanning (Cr. Doc. 49, pp. 4-5). Fanning explained that while some of the comments of the "sentencing commentary" were titled as "objections," they were meant as "philosophical arguments." Fanning stated that the PSR accurately calculated Friedel's guideline sentence (Cr. Doc. 49, p. 5). The government, represented by Assistant U.S. Attorney Suzanne Garrison, recommended a below-guideline sentence of 60 months' imprisonment (Cr. Doc. 49, p. 100).

In imposing a below-guideline sentence of 60 months, the undersigned made the following findings:

> So I talked earlier about the various sentencing factors. Nature and circumstances of the offense, there's -- if anybody would debate that this is a serious offense, I think they would be disingenuous. It clearly is a serious offense for all the reasons that people have already acknowledged. And it doesn't matter, quite frankly -- there's been some discussion about how Mr. Friedel got started. I don't -- doesn't matter whether you start this accidentally or whether you start it on purpose. And there's even provisions in the law that if you run across it accidentally, what you can do to avoid a violation of the law.
>
> The question -- I mean the issue here is that there was a continuation of the criminal conduct for a period of time. I agree with the analysis Ms. Garrison pursues. And it's not a typical analysis in these cases to hear the United States talk about this case being a different one and to have them ask the Court to vary from the guidelines. I'm not sure if I've ever had the government ask me to vary from the guidelines in

one of these cases, but -- so it points out that there always is room for individualized analysis in each and every case.

And this is different, and I recognized it as I was looking through the case in preparation for this hearing, and wondering how each side would approach the case. And what's different about it is that Mr. Friedel did have -did conduct the criminal activity for a limited period of time. There seems to be some degree of doubt on the part of the agent about whether he truly quit. Maybe he tried to backslide a little bit or was tempted to backslide a little bit, and caught himself. Not exactly sure what that entry on or about April 28th was about, but in any event, the record before the Court is that it's for a limited period of time, and that's something substantially different than what we typically see in these cases.

When we look at the defendant's history and characteristics, there's no criminal history. That's not completely different, it's not all together unusual to see that in these cases, though it isn't always the case. One of the things I do take from Dr. Codispoti's report and from the witnesses we heard testify is that there is absolutely no indication in the record that Mr. Friedel is a danger to children, and so there's no reason for the Court to be concerned about that part. Like Ms. Garrison -- and I have a hard time wrapping my mind around Dr. Codispoti's theory about repetition compulsion because there are some other things that I found to be inconsistent in her report relative to that. And I think there were some suggestions in her report and about the evaluation that would suggest to me that Mr. Friedel's approach there was a bit self-serving. That's not -- I'm not accusing him of obstruction of justice in any way, shape or form; I'm just not quite accepting of that theory and her theory about why he was looking at the child pornography. Nothing about what she said, quite frankly, takes away from the illegality of it, but it -- but the limited nature of it does make it a little different.

I still am concerned about the distribution. I don't think -- and even what Mr. Friedel told me here today takes away from that. And quite frankly, Mr. Fanning makes as good an argument as anybody can make in this case for probation, but given the nature of the crime and the nature in which Mr. Friedel downloaded and shared the pornography, I'm just simply not going to give him probation. It is just not in the offing. I think that that would not appropriately address the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment.

I am not one of the judges that believes that the guidelines in this area are flawed or that they're -- or that all of the enhancements that go along with what we talked about when calculating the offense are inappropriate. I do not believe that the minor role reduction that Mr. Fanning talked about in his sentencing commentary is appropriate. I think that the guidelines are well thought out. I think that they are appropriate in the vast majority of child pornography cases. I have absolutely no problem in applying them where they are applicable on a case-by-case basis, but it is strictly a case-by-case analysis.

I think that Mr. Friedel is not a lost cause. I think he's a talented young man. I think that he is rehabilitative, as Mr. Fanning kept asking over and over again. I don't think there's any problem with respect to protecting society or deterrence to criminal conduct, but I think the conduct that he engaged in and I think the crime that he committed is a very serious one, and I think that has to be addressed, and I think punishment must be imposed. Having said that, I think this is, as Ms. Garrison talked about, a little different case.

So is there reason to exercise my discretion, as the government asks, and to impose a sentence below the guideline for the reasons that Ms. Garrison talked about? Yes, I agree with her. I think it is a case where that would be appropriate, and I'm -- and I think the term of imprisonment that she asked the Court to consider is an appropriate sentence, and I will shortly, when I impose a sentence, impose a sentence of 60 months, as I agree with her rationale.

I also will impose a much lesser fine than that suggested by the guidelines. Ms. Garrison asked me to impose the least amount of supervision that is called for by the statute, and I disagree with that. I'm going to impose a ten-year term, with the understanding that the defendant can earn his way to an early termination if that works out, but I'm going to start with a ten-year term.

I'm also going to impose the typical sex offender special conditions and restrictions with respect to internet use. I'm not going to bar him from internet use, but certain restrictions as well as search conditions. If there are no questions or comments, I will proceed with formal imposition of sentence.

Court, having considered all the information in the presentence report, including the guideline computations and the factors set forth in 18 United States Code, Section 3553(a), and pursuant to the

> Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Zachary G. Friedel, be committed to the custody of the Bureau of Prisons to be imprisoned for a term of 60 months.

(Cr. Doc. 49, pp. 109-114). Following entry of judgment on May 9, 2011 (Cr. Doc. 39), Friedel did not appeal his conviction. Friedel timely filed his instant Section 2255 motion entered on May 7, 2012 (Doc. 1). For the following reasons, Friedel's Section 2255 motion is **DENIED**.

### IV. Friedel's Section 2255 Petition is Denied

#### a. Law

A prisoner may move to vacate, set aside or correct his sentence if he claims "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, relief under Section 2255 is "reserved for extraordinary situations," *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)), as a collateral attack pursuant to Section 2255 is not a substitute for a direct appeal. *Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007).

Thus, unless a movant demonstrates changed circumstances in fact or law, he may not raise issues already decided on direct appeal, *Olmstead v. United States,* 55 F.3d 316, 319 (7th Cir. 1995). Further, a petitioner cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal, or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Bousley v. United States,* 523 U.S. 614, 622 (1998); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *Fountain v. United States,* 211 F.3d 429, 433 (7th Cir. 2000). Moreover, a Section 2255 motion cannot pursue nonconstitutional issues that were not raised on direct appeal regardless of cause and prejudice. *Lanier v. United States,* 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the Section 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

Ineffective assistance of counsel forms the crux of Friedel's petition. Importantly, the Supreme Court has held that the usual procedural default rule does not generally apply to such claims as, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504 (2003).

To succeed in an ineffective assistance of counsel claim, a petitioner must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the first prong, "the Court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the second prong, a petitioner must demonstrate to a "reasonable probability" that without the unprofessional errors, "the result of the proceeding would have been different." *Id.* at 696. A district court's analysis begins with a "strong presumption that the defendant's attorney rendered adequate representation of his client." *United States v. Meyer*, 234 F.3d 319, 325 (7th Cir. 2000). Thus, a petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006).

Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate prejudice arising from a guilty plea allegedly rendered involuntary by counsel's deficient performance, a petitioner must establish that counsel's performance was objectively unreasonable and that, but for counsel's erroneous advice, he would not have pleaded guilty. *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (citing *United States v. Martinez*, 169 F.3d 1049, 1052-

53 (7th Cir. 1999)). Statements at a change of plea hearing are presumed truthful. *See United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998). The record that is created at a Rule 11 hearing is accorded a "presumption of verity." *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir. 1992). Thus, a defendant who files a motion to withdraw his plea on the ground that his plea was not knowing and voluntary, contrary to his assertions at the Rule 11 proceeding, faces a heavy burden of persuasion. *See United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). "'The district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the Rule 11 hearing.'" *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995) (quoting *United States v. Groll*, 992 F.2d 755, 758 (7th Cir. 1993)).

### b. Application

**1. Ineffective Assistance of Counsel During Plea Negotiations.**

Friedel argues Fanning did not properly advise him during the plea bargaining process and did not properly use the psychiatric evaluation Dr. Codispoti prepared at Fanning's request. Friedel states he "was not given truthful advice as to the difference and weight of the 'open' plea and the specific sentence plea." Friedel alleges Fanning advised him to not accept a specific sentence plea. Friedel further alleges Fanning was aware, prior to sentencing, that Friedel would receive a prison term, as opposed to probation. Additionally, Friedel alleges Fanning informed him that all parties would recommend probation in court.

Friedel's arguments are clearly unfounded. First, Friedel has not established that the government made him a specific sentence plea offer. The

government advises the Court that it never made Friedel an offer for a recommended sentence of probation or for a "specific sentence plea," in the form of a binding plea under FEDERAL RULE OF CRIMINAL PROCEDURE 11(c)(1)(C), as the U.S. Attorney's Office does not often extend such offers. Fanning's affidavit confirms that the government never agreed to recommend probation and Friedel was aware of this fact (Doc. 5-6).

Even if the government had made such a recommendation, Friedel cannot establish that the Court would have imposed a lesser sentence than the 60 month, below-guideline sentence imposed. Friedel was clearly advised during the change of plea colloquy that the Court was not a party to any agreement and was not obligated to follow sentencing recommendations of any party. *See Paters v. United States,* 13 Fed. App'x. 392, 399 (7th Cir. 2001) (discussing likelihood of district court rejecting proposed plea agreement as a factor suggestive of a lack of prejudice). In fact, the undersigned can unequivocally state that the Court would not have imposed a term of probation even if the government had recommended such a sentence. As explained at Friedel's sentencing, while Fanning "made as good an argument as anybody can make in this case for probation," probation "would not appropriately address the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, [and] provide just punishment."

As to Friedel's vague argument that Fanning did not properly utilize the evaluation of Dr. Codispoti to pursue a specific sentence agreement, the Court

finds such conclusory statements do not demonstrate Fanning's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 694. It is unclear to the Court what more Fanning could have done than to obtain a psychiatric evaluation of Friedel and present it to the government as he did. The fact the government did not find the evaluation warranted a specific sentence plea agreement is not attributable to Fanning.

Friedel was clearly informed of his possible sentencing options and voluntarily agreed to plead guilty with this knowledge. The fact the Court did not impose a sentence of probation does not mean Fanning's representation was constitutionally deficient. Fanning made every effort to advocate for his client throughout the plea bargaining process. While Fanning and Friedel were hopeful that the Court would impose a sentence of probation, the Court ultimately found such a sentence was not appropriate or warranted under the circumstances of Friedel's case. As to prejudice, Friedel does not even argue that but for Fanning's alleged misrepresentations, Friedel would not have pleaded guilty. *Bridgeman*, 229 F.3d at 592. Thus, Fanning's representation was not ineffective throughout the plea negotiations.

**2. Ineffective Assistance of Counsel at Sentencing**

Friedel additionally argues that Fanning was ineffective for failing to object or fight sentencing enhancements and did not inform Friedel of said enhancements. At the change of plea hearing, Friedel was informed of his guideline sentence range. While Fanning made certain philosophical arguments

concerning the PSR's guideline sentencing calculations, Fanning conceded it was technically correct. Fanning presented mitigation testimony through Friedel's family members and Dr. Codispoti and vigorously urged a probation sentence. Ultimately, Friedel received a sentence significantly below the low-end of the advisory guideline range. Friedel cannot demonstrate that Fanning's representation at sentencing was ineffective. *See Strickland*, 466 U.S. at 694.

### 3. The Court Denies Friedel a Certificate of Appealability.

Under Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether Friedel's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability have been granted. *See Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must demonstrate that, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were

'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

For the reasons stated above, Friedel's claims are without merit. Fanning provided Friedel with more than objectively reasonable counsel and Friedel voluntarily pleaded guilty with full knowledge of his possible sentence. Thus, reasonable jurists would not debate that the petition does not present a substantial showing of the denial of a constitutional right, nor would they encourage the claims to proceed further. Therefore, the Court **DENIES** Friedel a certificate of appealability.

### V.    Conclusion

For the reasons set forth above, Friedel's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence is **DENIED** (Doc. 1). Thus, Friedel's claims are **DISMISSED with prejudice**. The Clerk is instructed to enter judgment accordingly. Finally, the Court shall not issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 18th day of April, 2013.

Digitally signed by
David R. Herndon
Date: 2013.04.18
13:57:46 -05'00'

**Chief Judge**
**United States District Court**